COMMONWEALTH of Kentucky,
Appellant,

v.

Carl W. BROWN, Appellee.

No. 94–CA–2517–MR.

Court of Appeals of Kentucky.

Dec. 1, 1995.

Martin Z. Kasdan, Jr., Amy Benovitz, Assistant Jefferson County Attorneys, Louisville, on brief, for Appellant.

Carl W. Brown, pro se.

Before LESTER, C.J. and JOHNSTONE and WILHOIT, JJ.

JOHNSTONE, Judge.

At issue is the proper method of calculating the date on which a probable cause hearing must be conducted in cases of involuntary hospitalizations. The matter is before us on appeal from the granting of a writ of habeas corpus releasing appellee from the custody of Central State Hospital. We affirm the decision of the Jefferson Circuit Court.

Appellee, Carl Brown, was the subject of a KRS Chapter 202A mental inquest warrant executed on Saturday, October 15, 1994. On the following Tuesday, October 18, 1994, the judge presiding over the mental inquest division of the Jefferson District Court entered an order setting Tuesday, October 25, 1994, as the date upon which a probable cause hearing would be conducted in appellee's case. However, on October 25, 1994, a judge of the Jefferson Circuit Court issued a writ of habeas corpus releasing appellee from the custody of Central State Hospital on the basis that the probable cause hearing had not been conducted within the six-day period prescribed in KRS 202A.071. The Commonwealth on that same day moved for emergency relief in this Court pursuant to CR 76.33. After that request for relief was denied, the Court directed the parties to brief the issue presented.

As a preliminary matter, we note that both parties agree that the issue is not moot

because it is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 514–15, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Because of the great number of these cases facing the district courts of this Commonwealth on a daily basis, and because of the conceded importance of establishing a correct and consistent method of calculating the statutory time limit, we conclude that the matter is not moot and should be reviewed.

■ With this brief factual and procedural overview in mind, we turn to the merits of the Commonwealth's appeal. KRS 202A.071 mandates that the preliminary hearing in the case of an involuntary hospitalization shall be held "not later than six (6) days (excluding weekends and holidays) from the time of holding under these proceedings." It is undisputed that appellee Brown was initially detained on Saturday, October 15, 1994. The proper method of calculating the conclusion of the six-day period cited above is the core of this controversy.

Appellant insists that because KRS 202A.076(2) requires the application of the Kentucky Rules of Criminal Procedure to proceedings under Chapter 202A, RCr 1.10 must be utilized in calculating the time limit for the preliminary hearing. Appellant's argument is based upon that portion of the criminal rule which states that for purposes of calculating time, "... the day of the act, event or default after which the designated period of time begins to run is not to be included," and the further provision that where the prescribed time is less than seven (7) days, "intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation." It is appellant's position that because the triggering event (detention) occurred on Saturday, it will be deemed to have occurred on Monday because Saturdays and Sundays are excluded. As Monday will now be considered to be the day of the occurrence, it must also be excluded under RCr 1.10. We are persuaded that appellant's calculation is fatally flawed.

Assuming for the sake of argument that RCr 1.10 applies to these proceedings, appellant's calculation of the six-day period is nevertheless erroneous. The initial error concerns the elimination of Saturday from the computation. Saturday is to be excluded from the calculation because it is the day of the occurrence, *not* because it is a Saturday. This interpretation comports not only with RCr 1.10, but also KRS 446.030(1)(a), a legislative directive concerning the method to be used in "computing any period of time prescribed or allowed ... by any applicable statute or regulation." That statute, like RCr 1.10, not only excludes from the computation the day of the event, but it also eliminates *"intermediate"* Saturdays, Sundays and legal holidays when the prescribed period is less than seven (7) days. "Intermediate" is ordinarily understood to mean "being or occurring at the middle place, stage, or degree or between extremes," *Webster's New Collegiate Dictionary* (1976). The fact that the detention occurred on a Saturday is not relevant to the exclusion of Saturdays and Sundays because it is not an *intermediate* Saturday, Sunday or legal holiday. "Intermediate" must be construed as implying a day between the day of the event in question and the conclusion of the prescribed period.

Sunday, October 16, however, is such an intermediate day and it must be excluded on that ground. This Court simply cannot fathom a logical basis for excluding Monday, October 17, a business day which was not a legal holiday, as Saturday has already been excluded as the day of the triggering event. It must therefore be counted as day one of the six-day period.

Under this method of calculation, the six-day time frame for conducting the requisite preliminary hearing expired on Monday, October 24, 1994. Appellant suggests, however, that despite the erroneous computation, appellee Brown should not have been released; that the error, if any, consumed no more than 24 hours; and that Brown's release constituted an unwarranted punitive action against the Commonwealth and its citizens. We cannot agree with these contentions.

■ We find it plain beyond dispute that any restraint upon appellee's freedom must be pursuant to a valid exercise of a clearly defined grant of governmental power. The Commonwealth is not free to amend the de-

tention statute to impose a seven-day limit for the conducting of a hearing where the General Assembly saw fit to prescribe six. In our view, the decision in this case parallels the result reached by the Court in *Jones v. Rayborn,* Ky., 346 S.W.2d 743, 748 (1961), stating:

> We believe this case might well be decided entirely under the poetic but rarely applied § 2 of the Constitution of the Commonwealth of Kentucky where it is written:
>
>> "Absolute and arbitrary power over the lives, liberty and property of free men exists nowhere in a republic, not even in the largest majority."

A more recent look at this constitutional protection is contained in *Yost v. Smith,* Ky., 862 S.W.2d 852 (1993), in which our Supreme Court provides the following analysis:

> When considered against the historical background it is evident that Section 2 of the Kentucky Constitution implies the same protection as the equal protection clause of the Fourteenth Amendment, and the exercise of an absolute and clearly arbitrary power over the appellant is a valid reason for discharge under a habeas corpus writ.
>
> Section 2 of the Kentucky Constitution (along with Sections 1, 3 and 59) expresses the guarantee of procedural fairness and equal protection. Thus, it is both justifiable and understandable to utilize Section 2 of the Kentucky Constitution because of the lack of a more suitable provision to serve this purpose.
>
> There is no substantive distinction between cases following the principle of law set forth in *Jones v. Rayborn* from the case at bar.
>
> . . . .
>
> The evil in this and the *Rayborn* case is not so much as what was done, but that it was done without authority. *Human liberty, as well as the restricted liberty of a prisoner, is always a serious matter.*

*Yost,* 862 S.W.2d at 854, 855 (emphasis added).

Therefore, while the Commonwealth may contend that a "mere" 24 hours' additional restraint is inconsequential in the larger picture of public protection, it is 24 hours more than is authorized by the statute. As explained in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973): ". . . the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." Thus, appellee's release pursuant to the writ was not a punitive action against the Commonwealth, but was the sole vehicle by which he could test the legality of his detention and enforce the protections guaranteed in the United States and Kentucky Constitutions. *Yost, supra.*

The decision of the Jefferson Circuit Court is affirmed.

All concur.